UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 09 CR 383-5,9 |
| | ) | |
| v. | ) | Chief Judge Ruben Castillo |
| | ) | |
| ALFREDO VASQUEZ HERNANDEZ, | ) | |
| a/k/a "Alfredo Compadre," and | ) | |
| TOMAS AREVALO RENTERIA | ) | |
| | ) | |

## GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE*

The United States of America, by its attorney, Zachary T. Fardon, United States Attorney for the Northern District of Illinois, respectfully submits its consolidated motions *in limine* seeking pretrial rulings on the admissibility of certain evidence and the propriety of certain arguments. The government submits these motions *in limine* pursuant to the Court's Order that such motions be filed by December 19, 2013, and the government has filed in good faith these motions related to issues it currently envisions occurring at trial. However, as the trial date is still two months away, currently set for February 18, 2014, the government respectfully requests that it be permitted to supplement these motions *in limine* if additional issues arise, to obtain the Court's evidentiary rulings prior to trial. The government currently moves as follows:

**I.    Motion to Require The Defense To Make A Sufficient Evidentiary Proffer Before Arguing Or Seeking To Introduce Evidence In Support Of An Affirmative Defense.**

As of this date, neither defendant Vasquez Hernandez nor defendant Arevalo Renteria has filed any notice of their intent to present particular defenses, nor has

counsel for the defendants informed the government of any defense they intend to present at trial. The government is therefore in the position of trying to anticipate potential defenses, and address the evidentiary issues related to them. The government therefore respectfully moves this Court, *in limine*, to require the defense to put forth a sufficient pre-trial evidentiary proffer of facts, accompanied by discovery to the government, to support any affirmative defense before being allowed to argue or present evidence in support of such a defense. Where the defendant asserts an affirmative defense, "[m]otions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). In response to a motion in limine challenging an affirmative defense, the defendant must make a pre-trial proffer of evidence. Id. at 979. If, taken as true, the evidence is insufficient as a matter of law to support a defense, the court should exclude the defense. See *United States v. Bailey*, 444 U.S. 394, 415-17 (1980); *United States v. Baker*, 438 F.3d 749, 753 (7th Cir. 2006); *United States v. Fish*, 388 F.3d 284, 287 (7th Cir. 2004) (vacated on other grounds by 544 U.S. 916 (2005)).

**A.     Defendants Should Be Barred From Presenting A Public Authority or Entrapment By Estoppel Defense, Absent Proper Notice and Pre-Trial Proffer of Evidence.**

To date, neither defendant Vasquez Hernandez nor defendant Arevalo Renteria has filed the requisite notice of their intent to present a public authority defense or a defense of entrapment by estoppel.   Therefore, the government moves *in limine* to preclude defendant from presenting evidence or making arguments at trial relating to defenses of public authority and entrapment by estoppel, absent proper notices and a pre-trial proffer of evidence that is sufficient to support those defenses as a matter of law.

Federal Rule of Criminal Procedure 12.3 sets forth specific requirements the defendant must meet in giving notice of a public-authority defense.   These requirements apply equally to a defense of entrapment by estoppel.   *United States v. Neville*, 82 F.3d 750, 761 (7th Cir. 1996).   Rule 12.3 provides:

> If a defendant intends to assert a defense of actual or believed exercise of public authority or behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense, the defendant must so notify an attorney for the government in writing and must file a copy of the notice with the clerk within the time for filing a pretrial motion, or at any later time the court sets.

Fed. R. Crim. P. 12.3(a)(1).

Under the rule, the notice must contain: (1) the law enforcement agency or federal investigative agency involved; (2) the agency member on whose behalf the defendant claims to have acted; and (3) the time during which the defendant claims to have acted with public authority.   Rule 12.3(a)(2).

3

Congress enacted Rule 12.3 because of concerns "with the increasing number of defendants attempting to utilize [the pubic authority] defense, the problems of surprise the defense created at trial[,] and the subsequent disclosures of confidential information which the defense often required." *United States v. Pitt*, 193 F.3d 751, 756 (3d Cir. 1999). Like Rule 12.1 and Rule 12.2, which govern notice of alibi and insanity defenses, "the rule's purpose is to avoid unfair surprise to the government," and like those rules, Rule 12.3 requires detailed notice. See *United States v. Burrows*, 36 F.3d 875, 881 (9th Cir. 1994) (explaining that the three rules "embod[y] the same rationale"); *United States v. Jackson*, No. 96 CR 815, 1998 WL 149586 (N.D. Ill. Mar. 24, 1998) (Williams, J.) ("Rule 12.3 was designed to protect the government from unfair surprise"); cf. *United States v. Buchbinder*, 796 F.2d 910, 915 (7th Cir. 1986) (explaining notice requirements of Rule 12.2 and noting that "the government cannot conduct its own investigation into the validity of the defense of lack of mental capacity and decide if it will present expert witnesses in rebuttal until such time as it has knowledge of the psychiatric and psychological evidence the defense intends to present."). Accordingly, Rule 12.3 rule "requires the defendant to summarize the defense," and requires the government to respond by "stat[ing] its position regarding the defense summarized in the notice." Committee Note, Preliminary Draft of Proposed New Amendment to the Federal Rules of Criminal Procedure; 111 F.R.D. 489, 500 (1986); Rule 12.3(a)(3).[1]

---

[1] The Committee Note is to the draft rule circulated by the Criminal Rules

4

Where a showing by the defendant is insufficient, the Seventh Circuit and other courts have repeatedly upheld the pre-trial exclusion of the public-authority and entrapment-by-estoppel defenses. See *Baker*, 438 F.3d at 753-58; *Fish*, 388 F.3d at 287; *United States v. Pardue*, 385 F.3d 101, 108-09 (1st Cir. 2004); *United States v. Achter*, 52 F.2d 753, 755 (8th Cir. 1995); *United States v. Reyes-Vasquez*, 905 F.2d 1497, 1501 (11th Cir. 1990); *United States v. Anderson*, 872 F.2d 1508, 1515-16 (11th Cir. 1989); *United States v. Rosenthal*, 793 F.2d 1214, 1236-37 (11th Cir. 1986); *United States v. Kashmiri*, No. 09 CR 830-4, 2011 WL 1326373, *3 (N.D. Ill. Apr. 1, 2011) (Leinenweber, J.).

Because neither defendant in the case going to trial has given notice to the government and to the Court, as required, the government respectfully requests the Court to order that defendant Vasquez Hernandez and Arevalo Renteria and their counsel may not introduce evidence related to, or argue, a public authority or entrapment by estoppel defense.

---

Committee of the Judicial Conference of the United States in 1986. Courts have cited the Committee Note as an authoritative explanation of the rule as adopted by Congress. *See Pitt*, 193 F.3d at 757 (3d Cir. 1999); *Burrows*, 36 F.3d at 881 (9th Cir. 1994).

**B.    The Court Should Require Defendants To Present A Pre-Trial Proffer Of Any Evidence They Intend To Introduce In Support Of An Entrapment Defense.**

As with the public authority and entrapment by estoppel defenses, neither defendant going to trial has indicated to counsel for the government that he plans to assert an entrapment defense.   Nor are the defendants required to do so by rule. However, in order for the Court to determine whether the presentation of the defense to the jury would be proper, the government asks the Court to require the defendants to present a pre-trial proffer of evidence that they would introduce that would support an entrapment defense.   As the Seventh Circuit has explained, "there exists substantial legal authority" in support of a court requiring a defendant to make a sufficient proffer of entrapment evidence before presenting such a defense to the jury.   *United States v. Blassingame*, 197 F.3d 271, 280 (7th Cir. 1999).

 "An entrapment defense contains two related elements: (1) government inducement of the crime; and (2) the defendant's lack of predisposition to engage in the crime."   *United States v. Plowman*, 700 F.3d 1052, 1057 (7th Cir. 2012).   See also *Blassingame*, 197 F.3d at 279-80; *United States v. Santiago-Godin*ez, 12 F.3d 722, 728 (7th Cir. 1993).   "To present an entrapment instruction to a jury, a defendant must be able to proffer sufficient evidence of both elements."   *Plowman*, 700 F.3d at 1057.   "The defendant does not need to prove entrapment in such a pretrial proceeding, but the defendant has the burden to present more than a scintilla of evidence that entrapment occurred."   *Id*.   If a defendant adequately meets his burden of production as to both elements of entrapment, the burden of persuasion shifts to the government, which can rebut the entrapment defense by

proving beyond a reasonable doubt either the absence of government inducement or the defendant's predisposition to commit the offense. *Blassingame*, 197 F.3d at 280; *Santiago-Godinez*, 12 F.3d at 728.

If the defendants intend to argue, introduce evidence, or elicit testimony during trial (either on direct examination or through cross-examination) that suggests they were not predisposed to commit the crime and that the government provided an inducement that would blind the ordinary person to their legal duties, such evidence or testimony should not be admissible absent a pre-trial evidentiary proffer that meets the defendants' burden of production regarding the entrapment defense.

## II. Inadmissibility of Evidence and Argument of Lawfulness and Non-Corrupt Conduct

The government moves the Court to exclude all evidence offered by defendants of their lawfulness and/or non-corrupt conduct, except reputation or opinion evidence offered by character witnesses strictly in accord with the limitations of Federal Rule of Evidence 405(a).[2] Other than testimony from character witnesses fitting within the narrow confines of Rule 405(a), no such evidence is admissible.

In an effort to distract the jury from the charges with which defendants have been charged, defendants may seek to call witnesses to testify that on prior occasions

---

[2] Even evidence offered under Rule 405(a), of course, cannot include specific instances of good conduct: it is limited to a description of the subject's reputation or to a brief statement of opinion, without support from specific instances of conduct. *See* Advisory Committee Notes to Rule 405 (The rule "contemplates that testimony of specific instances is not generally permissible on direct examination of an ordinary opinion witness to character . . . . [O]pinion testimony on direct in these situations ought in general to correspond to reputation testimony as now given, *i.e.*, be confined to the nature and extent of observation and acquaintance upon which the opinion is based").

defendants acted lawfully. Any evidence or argument of this sort is inadmissible, and the Court should exclude it. The law is clear: "Evidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment." *United States v. Reese,* 666 F.3d 1007, 1020 (7th Cir. 2012). "A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." *United States v. Scarpa,* 897 F.2d 63, 70 (2d Cir. 1990) (excluding taped proof that defendants met regularly and did not discuss criminal activity). Evidence of other lawful behavior is irrelevant because acts of honesty do not prove an absence of dishonest acts. *See, e.g., id.; United States v. Beno*, 324 F.2d 582, 589 (2d Cir. 1963) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant."); *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) (upholding exclusion of evidence that used car dealer paid for some cars instead of stealing them).

To hold otherwise would be to eviscerate the carefully drafted limitations of Rule 405, which forbids proof of good character through evidence of specific acts where character is not an element of the charge or defense. *See Beno*, 324 F.2d at 584, 587. Like Rule 403, Rule 405 is intended to prevent the series of wasteful "mini-trials" which would inevitably ensue if defendants were allowed to pursue this irrelevant line of inquiry. The Advisory Committee Notes for Rule 405 conclude that proof of character by means of specific acts "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." *See, e.g., Grimm*,

8

568 F.2d at 1136 (evidence of lawful transactions "could have complicated the case and confused the jury").

In the event that the defense seeks to elicit testimony or present evidence or argument concerning non-criminal conduct or good acts, the government respectfully requests that the Court require that the issue be raised with the Court in advance of trial, to avoid surprise and error by allowing the government an opportunity to object, and the Court an opportunity to rule, before any such evidence came to the jury's attention.

## III. Allegations of Witness Wrongdoing Not Involving Dishonesty

Each of the witnesses in this case presents challenges to the government, the defense, and the Court. Many of the witnesses were successful enough drug traffickers to have access to the highest levels of the Sinaloa Cartel. Additionally, much of the conduct that is alleged in the indictment and has been disclosed as 404(b) evidence occurred outside the United States, primarily in Mexico. The government has produced to defense counsel, and will continue to produce to defense counsel as necessary, materials setting forth prior "bad acts" known to the government. In an abundance of caution, the government has produced various materials that do not constitute admissible impeachment. Of course, the mere fact that the government has produced to the defense a fact or an allegation does not render it admissible at trial.

A.      **Arrests**

The government has disclosed to defense counsel rap sheets and criminal histories of witnesses it may call at trial. Many of these witnesses have been arrested on prior occasions. Evidence of a prior arrest should be precluded in accordance with the strictures of Federal Rules of Evidence 609 and 608. Rule 609 allows for the admission of a witness's felony conviction for purposes of impeachment under certain specified circumstances. Under the Rule, "[f]or the purpose of attacking the credibility of a witness, evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted . . ." Fed. R. Evid. 609. By its express terms, Rule 609 permits evidence only of convictions, not arrests.

Nor are arrests admissible under Fed. R. Evid. 608(b). Rule 608(b) provides that specific instances of past conduct may be inquired into on cross-examination if and only if they concern the witness's character for truthfulness.[3] Courts have not construed Rule 608(b) to permit cross-examination on prior *arrests* absent special facts bearing on the witness' character for the specific trait of truthfulness. Thus, in *United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980), the Eighth Circuit held that a witness may not be cross-examined about an arrest except where Rule 608(b) would permit inquiry into specific acts leading up to the arrest that related to crimes of

---

[3]      Even then, these past instances may not be proved by extrinsic evidence. *See* Fed. R. Evid. 608(b).

falsity--*e.g.*, perjury, subornation of perjury, or false pretenses. *See also United States v. Sellers*, 906 F.2d 597, 603 (11th Cir. 1990). Unless defendants can demonstrate that the conduct underlying the arrest implicates a witness's character for truthfulness, defendants should be precluded from inquiring into the conduct.

**B.    Facts Underlying Convictions**

Certain potential witnesses in this case have been convicted of felony crimes. Although the fact of a conviction may be admissible, provided the requirements of Rule 609 are met, the underlying details of the conviction are not, unless these facts themselves are probative of truthfulness. *See   United States v. Zarattini*, 552 F.2d 753 (7th Cir. 1977); *United States v. Chaverra-Cardona*, 669 F. Supp. 1445 (N.D. Ill. 1987).

**C.    Other "Bad Acts" By the Witnesses**

The government has disclosed much of the impeachment material related to government witnesses beginning with its first wave of discovery. Those disclosures include drug dealing by government witnesses in Chicago on a likely unprecedented scale. Those disclosures will continue, including 3500 and *Giglio* material disclosed contemporaneously with this filing. Moreover, the government will continue to disclose to defense counsel "bad acts" by its witnesses that are known to, or subsequently learned by, the government. Under Rules 611 and 608(b), defendants are permitted to inquire into specific bad acts of a witness only if these acts are probative of truthfulness. *See, e.g., United States v. Van Dorn*, 925 F.2d 1331 (11th Cir. 1991) (threats made by witness to judicial officers in a prior drug prosecution not

11

relevant to a witness's truthfulness); *United States v. McNull*, 887 F.2d 448 (3d Cir. 1989) (solicitation to commit crime of violence is not probative of truthfulness); *United States v. Bentley*, 706 F.2d 1498, 1509-10 (8th Cir. 1983) (evidence of witness's involvement in drug operation not proper impeachment under Rule 608(b)); *United States v. Fortes*, 619 F.2d 108, 117-18 (1st Cir. 1980) (affirming trial court's refusal to allow cross-examination concerning witness's involvement in sale of cocaine on ground that selling cocaine is not probative of truthfulness or untruthfulness under Rule 608(b)); *United States v. Young*, 567 F.2d 799, 803 (8th Cir. 1977) (disallowing cross-examination of government witness concerning her alleged offer to pay $10,000 to have her husband killed, because "the proposed question was not relevant to veracity and honesty and would have been highly prejudicial").

The witnesses the government intends to call have been asked about a variety of impeachment material, and that material has been disclosed to the defense. Many events, or the denial of events, occurred outside of the United States, where corroboration of the witnesses' answers is unpredictable, unreliable, and perhaps deadly. In the context of cross-examination of these witnesses, both the government and the Court are entitled to know, in advance, of the good faith basis for any line of inquiry on cross examination, including any extrinsic evidence that forms that good faith basis, so that the Court can make the appropriate rulings outside of the presence of the jury. That inquiry includes, of course, a Rule 403 analysis by the Court. Consequently, the government respectfully requests that, according to a schedule set by the Court, defense counsel identify any prior "bad acts" about which

they intend to cross-examine a given witness and demonstrate how that conduct is probative of truthfulness, in accordance with the Federal Rules.

### D.     Drug Use by Witnesses

Some of the government's anticipated witnesses may testify that they have used narcotics in the past.   Any inquiry into prior narcotics use by a witness should be limited as set forth below.

The courts of appeals, including the Seventh Circuit, have held that a witness' past drug use is not probative of veracity and, hence, is not a proper subject for cross-examination.   *See United States v. Neely*, 980 F.2d 1074, 1081 (7th Cir. 1992), *cert. denied* 113 S. Ct. 654 (1992).[4]   As the Court stated in *Neely*, case law "forbid[s]" character attacks based on the "suggest[ion] . . . that people who have used drugs are more likely to tell lies."   *Id.* at 1081.

Evidence that a witness has used illegal drugs may be admitted only "where the memory or mental capacity of the witness is legitimately at issue."   *Cameron*, 814 F.2d at 405.   For example, in *Robinson*, the defendants sought to cross-examine two government witnesses–Yager and Yackey–concerning their past drug use.   The trial court permitted the cross-examination of Yackey, but barred the cross-examination of Yager.   In affirming the evidentiary rulings, the Court stated:

---

[4] *See also United States v. Robinson*, 956 F.2d 1388, 1398 (7th Cir. 1992); *Jarrett v. United States*, 822 F.2d 1438, 1445-46 (7th Cir. 1987); *United States v. Cameron*, 814 F.2d 403, 404-405 (7th Cir. 1987); *United States v. Sellers*, 906 F.2d 597, 602 (11th Cir. 1990); *United States v. Phillips*, 888 F.2d 38, 40-41 (6th Cir. 1989).

> As to Yackey, the [defendants'] objections that cross-examination was unfairly limited is meritless because the district court allowed the [defendants] to demonstrate that drug and alcohol use had caused memory loss. As to Yager, the district court did not abuse its discretion in limiting cross-examination because, in voir dire, the [defendants] did not establish that Yager's drug use had affected his memory of relevant events.

956 F.2d at 1398.

Because of the prejudicial nature of testimony regarding prior drug use, a voir dire of the witness outside the presence of the jury should be conducted prior to any inquiry as to a witness' prior drug use. *See Robinson*, 956 F.2d 1388, 1397 (7th Cir. 1992) (relying upon voir dire of witnesses concerning their past drug use to affirm district court's evidentiary rulings). The government, therefore, requests this Court to order defendants to notify the Court, in advance of the witness' testimony, if defendants intend to inquire about prior drug use by the witness, so that a voir dire can be conducted prior to the witness' testimony.

### E.    Prior Convictions Over Ten Years Old

Federal Rule of Evidence 609 includes time restrictions on the use of prior convictions to impeach a witness. Rule 609(b) states that,

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

Some of the government's witnesses have convictions that are more than 10 years old. Based on Rule 609(b)'s time constraint of ten years from the date of conviction or date of release, the government is seeking to prevent defendants from introducing any evidence during this trial of convictions of prosecution witnesses that are more than 10 years old because they are too remote in time to have sufficient probative value to justify their admission into evidence.[5]

## IV.  Forms of Argument or Evidence Designed to Elicit Jury Nullification

The government respectfully moves this Court to preclude defendant from attempting to introduce evidence, make argument, or otherwise make statements designed to induce jury nullification.

The law is plain that it is improper for a defendant to suggest in any way that the jury should acquit the defendant even if it finds that the government has met its burden of proof. *See, e.g., United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless,

---

[5] Rule 609(b) states that "a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date . . ." Fed. R. Evid 609(b). However, the statute is silent at to when the ten year period ends. The Seventh Circuit has implied, although not explicitly stated, that the 10-year period ends when the witness actually testifies at trial (as opposed to the date of defendant's arrest or indictment in the case). *United States v. Thompson*, 806 F.2d 1332, 1339 (7th Cir. 1986) (because "Thompson's trial began within ten years of his release from confinement[,]" evidence of his prior conviction was properly admitted). *Thompson*, 806 F.2d at 1339. One district court has expressly held, relying upon the Seventh Circuit's decision in *Thompson*, that the "proper moment to conclude the ten year time period of Rule 609 is at the time a witness testifies at trial or the date when a public record of conviction is offered into evidence at trial." *Trindle v. Sonat Marine Inc.*, 697 F. Supp 879, 881-82 (E.D. PA 1988).

and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant." (citing *United States v. Kerley*, 838 F.2d 932, 938 (7th Cir. 1988), and *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993))); *see also United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification 'is not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'" (quoting *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983))); *see generally Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994) (noting that "defense counsel may not press arguments for jury nullification in criminal cases"); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (2nd Cir. 1993) ("Neither court nor counsel should encourage jurors to exercise [nullification] power. . . . A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification."); *United States v. Trujillo*, 714 F.2d 102, 105 (11th Cir. 1983) ("Appellant's jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice. While we recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath"); Seventh Circuit Committee Federal Criminal Jury Instruction 1.01 (1998).

Although the government is unable to anticipate each form of "jury nullification" argument or evidence that defendant may seek to interject into this trial, the government does note the following examples.

16

### A.     Argument or Evidence of "Outrageous Government Conduct"

The law is plain that it is improper for the defendant to suggest in any way that the jury should acquit the defendant even if it finds that the government has met its burden of proof.   *See, e.g., United States v. Perez,* 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly.") (citations omitted); *see also United States v. Laguna,* 693 F.3d 727, 731 (7th Cir. 2012) (holding district court properly excluded evidence regarding prior lenient treatment enjoyed by illegal reentry defendant during his cooperation with agents as irrelevant and potentially inviting of nullification); *United States v. Bruce,*   109 F.3d 323, 327 (7th Cir. 1997) (holding that jury nullification must not be "positively sanctioned by instructions" (internal citation and quotation marks omitted); *Scarpa v. Dubois,*   38 F.3d 1, 11 (1st Cir. 1994) (nothing that "defense counsel may not press arguments for jury nullification in criminal cases"); *United States v. Sepulveda,*   15 F.3d 1161, 1190 (1st Cir. 1993) (stating that "[a] trial judge . . . may block defense attorneys' attempts to serenade a jury with the siren song of nullification."); *United States v. Trujillo,* 714 F.2d 102, 105 (11th Cir. 1983) (stating, "Appellant's nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice . . . . [N]either the court nor counsel should encourage jurors to violate their oath.").   *See also* Seventh Circuit Committee Federal Criminal Jury Instructions (2012) 1.01.

There is an "increasing tendency in criminal cases to try some person other than the defendant and some issues other than his guilt." *United States v. Griffin*, 867 F.Supp. 1347, 1347 (N.D. Ill. 1994) (citation omitted). The "thrust of the defense" in these types of cases is this: "the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Id*. at 1347. In the face of this increasing tendency to interject themes of "government misconduct" into a defense strategy, courts routinely have granted motions in limine "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." *United States v. Shields*, 1991 WL 236492, at *3 (N.D. Ill. Aug. 13, 1991); *United States v. Finley*, 708 F. Supp. 906, 913-914 (N.D. Ill. 1989) (granting motion in limine to preclude evidence "which is not relevant to defendants' guilt but is designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation."); *United States v. Katz*, 1992 WL 137174, at *5 (N.D. Ill. 1992).

The impropriety of arguing allegations of governmental misconduct to the jury is twofold. First, and most fundamentally, the Seventh Circuit has rejected the outrageous government conduct defense and has held that such claims afford no defense to a criminal prosecution as a matter of law. *See United States v. Boyd*, 55 F.3d 239, 241-42 (7th Cir. 1995). *Boyd* is unequivocal in its holding that "outrageous government conduct" is no defense to a criminal charge, and the jury

18

thus should not be exposed to irrelevant allegations of this sort.   Second, even before the <u>Boyd</u> decision, this Circuit held that the issue of government misconduct was a matter of law for determination by the court:   "the issue of outrageous government conduct is not an issue for the jury." *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (noting that every circuit which has considered the issue has held that the issue is not a jury question) (citations omitted); *see also Katz*, 1992 WL 137174, at *5 ("[T]he government is right in attempting to preclude any argument by [defendant] before the jury that the government's conduct in investigating and prosecuting this case is outrageous."); *United States v. D'Arco*, 1991 WL 264504 (N.D.Ill. Oct. 18, 1991); *Shields*, 1991 WL 236492, at *3; *Finley*, 708 F. Supp. at 913-914.

## V.   <u>Potential Penalties Faced by Defendant if Convicted</u>

The government respectfully moves this Court to preclude defendant from attempting to introduce evidence, make argument, or otherwise mention the potential penalties defendant faces if convicted.

The Seventh Circuit has held unequivocally that "arguing punishment to a jury is taboo." *See, e.g., United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997); *see also United States v. McKenzie*, 922 F.2d 1323, 1327 (7th Cir. 1991) ("the sixth amendment requires that a jury determine questions of guilt or innocence; punishment is the province of the Court").   Under well-settled law, such argument or evidence is improper because the potential penalties faced by a defendant are irrelevant to the jury's determination of guilt or innocence.   *See, e.g., Shannon v. United States*, 512

19

U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed'").  Mention of the potential penalties faced by the defendant would serve only the improper purpose of jury nullification.  *See, e.g.,* *United States v. Reagan*, 694 F.2d 1075, 1080 (7th Cir. 1982) ("The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial" (quoting *United States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980))).

## VI.    Impropriety of Discovery Requests or Commentary Regarding Discovery in Presence of Jury

The government moves to preclude counsel from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on discovery matters, in the presence of the jury.  Such requests from counsel in front of the jury (which are becoming increasingly frequent and theatrical) are inappropriate and may create the impression that one side has suppressed information as a means of seeking an unfair advantage.  These requests, if appropriate, can easily be made to the Court or opposing counsel outside the presence of the jury with no prejudice resulting to either side.  Accordingly, the government moves that requests for discovery or comments relating to discovery be made outside the presence of the jury.  This system has been used in other cases--*e.g., United States v. Phillip Ishola, et al.*, 95 CR 523 (Leinenweber, J.)--and has worked well. The government believes it is a fair and sensible one to employ here.  *See generally*

20

*Thompson v. Glenmede Trust Co.*, 1996 WL 529693, at *2 (E.D.Pa. 1996) ("Rather than focus on the issues in the case, the jury may instead be misled by the irrelevant side issues of the discovery process. Therefore, the Court will not permit either party to refer to the discovery process in the presence of the jury at trial.").

## VII. Motion to Allow the Government to Introduce Evidence of Defendants' Recorded Jail Conversations

At trial, as described in the government's *Santiago* proffer, the government intends to introduce several recorded conversations in which defendant Vasquez Hernandez or defendant Arevalo Renteria participated in October and November 2008, related to the narcotics trafficking activities as alleged in the indictment. It is expected that witnesses who were also parties to those conversations will identify the voices as being those of Vasquez Hernandez and Arevalo Renteria on the respective recordings. Because the government bears the burden of proving that the person speaking on those recordings were defendants (what is known as "voice identification"), as part of its proof, the government intends to elicit testimony from a Spanish speaking law enforcement officer or linguist regarding his identification of each defendant's voice and the basis for that identification. It is expected that the government witness will testify that she has listened recorded calls made by each defendant while housed at Chicago Metropolitan Correctional Center, pending trial in this case. The government witness will then testify that she compared the known voice from the MCC telephone calls to the voice of the speaker during the recorded conversations, and determined that the relevant defendant was the speaker during

the recorded conversations.

The Seventh Circuit has recently and repeatedly affirmed precisely this type of voice identification testimony. *See United States v. Mendiola,* 707 F.3d 735, 738-42 (7th Cir. 2013) (citing cases). The government intends to rely on the evidence of defendants' recorded telephone calls from the MCC to prove identity, not for an improper purpose. The government will not suggest to the jury that defendant is guilty of the charged crime simply because he was detained prior to trial. Likewise, defendants may ask the Court to admonish the jury concerning the proper use of this evidence, another means of defusing the prejudice. Consistent with this authority, the government seeks a pretrial ruling from this Court allowing the introduction of evidence that defendants made recorded calls from the MCC following their arrest, which law enforcement officers then used to identify defendants' voices.

**IX.    Conclusion**

For the aforementioned reasons, the government respectfully requests that its motions *in limine* be granted.

Dated: December 19, 2013

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By:        *s/Thomas D. Shakeshaft*
THOMAS D. SHAKESHAFT
MICHAEL FERRARA
Assistant United States Attorneys
219 S. Dearborn Street, 5th Floor
Chicago, IL 60604
312-353-5300

23

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned Assistant United States Attorney hereby certifies that the following document:

**GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE***

was served pursuant to the district court's ECF system as to ECF filers on DECEMBER 19, 2013.

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By:    <u>*s/Thomas D. Shakeshaft*</u>
THOMAS D. SHAKESHAFT
MICHAEL FERRARA
Assistant United States Attorneys
219 S. Dearborn Street, 5th Floor
Chicago, IL 60604
312-353-5300